No. 25-1216

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

BILLIE JEROME ALLEN,

*Petitioner-Appellant,*

v.

S. MERENDINO,

*Respondent-Appellee.*

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:20-cv-00406-JRS-MJD, Hon. James R. Sweeney II

## MEMORANDUM IN OPPOSITION TO SUGGESTION OF
## SUMMARY AFFIRMANCE

Dara Sheinfeld
Diane Lucas
Matthew Stratis-Vasilakos
Stephanie Hansen
Erin Sifre
Chitra Kulkarni
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

Stuart Lev
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520 (phone)
(215) 928-0826 (fax)

*Counsel for Petitioner/Appellant*
*Billie Jerome Allen*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................. ii

INTRODUCTION ............................................................................................1

STATEMENT OF THE CASE............................................................................5

    A.   Indictment, Trial and Appellate Proceedings.............................................5

    B.   Mr. Allen Seeks Relief Under 28 U.S.C. § 2241 ......................................7

    C.   Proceedings Following *Jones v. Hendrix*................................................9

I.   WHETHER THE DISTRICT COURT HAD JURISDICTION TO HEAR
     MR. ALLEN'S HABEAS CORPUS PETITION IS A QUESTION
     WORTHY OF FULL BRIEFING AND REVIEW...........................................11

    A.   The *Jones* Decision.................................................................................12

    B.   Habeas Review Has Been Historically Available to Federal Prisoners
        Who Raise Jurisdictional Challenges .......................................................14

    C.   The Trial Court Lacked Jurisdiction To Try Mr. Allen for the Crime
        of Capital Murder....................................................................................15

        1.   Capital murder is a different crime than non-capital murder,
            because aggravating circumstances function as elements of the
            crime of capital murder............................................................16

        2.   Mr. Allen's grand jury did not consider any aggravating
            circumstance and did not specify any in the indictment.  Thus,
            Mr. Allen was never charged with capital murder.........................17

    D.  The Unusual Circumstances Present Here Make It Impossible To
        Seek Relief From The Sentencing Court....................................................19

II.  WHETHER THE COMMUTATION OF HIS DEATH SENTENCE HAS
     ANY IMPACT ON MR. ALLEN'S CONSTITUTIONAL CLAIM—AND
     IT DOES NOT—IS A QUESTION WORTHY OF FULL BRIEFING
     AND REVIEW. ........................................................................................25

    A.   Trial on a Capital Charge is Materially Different from Trial on a Non-
        Capital Charge as the Capital Charges Impacts Every Aspect of His
        Trial and Defense Strategy .......................................................................25

    B.   Mr. Allen Continues To Suffer Harm from the Unconstitutional
        Execution of the Death Sentence..............................................................28

III. CONCLUSION .........................................................................................30

i

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Allen v. United States*,
536 U.S. 953 (2002) ............................................................... 6

*Ex parte Bain*,
121 U.S. 1 (1887) ................................................................. 8

*Beason v. Marske*,
926 F.3d 932 (7th Cir. 2019) ............................................ 23

*Boumediene v. Bush*,
553 U.S. 723 (2008) .......................................................... 24

*Brown v. Davenport*,
142 S. Ct. 1510 (2022) ...................................................... 14

*Buchanan v. Kentucky*,
483 U.S. 402 (1987) .......................................................... 27

*Campbell v. Reardon*,
780 F.3d 752 (2015) .......................................................... 26

*Dall v. United States*,
957 F.2d 571 (8th Cir. 1992) ............................................ 23

*Dunn v. Reeves*,
594 U.S. 731 (2021) .......................................................... 26

*Gamble v. United States*,
587 U.S. 678 (2019) ................................................ 2-3, 3, 25

*Jones v. Hendrix*,
599 U.S. 465 (2023) ........................................ 5, 9, 11, 12, 13

*Lockhart v. McCree*,
476 U.S. 162 (1986) .......................................................... 27

*Matthews v. United States*,
622 F.3d 99 (2d Cir. 2010) ............................................... 18

*Osborn v Bank of United States*,
22 U.S. 738 (1824) ............................................................................ 5

*Ring v. Arizona*,
536 U.S. 584 (2002) ..................................................................... 6, 16

*Sattazhan v. Pennsylvania*,
537 U.S. 101 (2003) ......................................................................... 16

*Ex parte Siebold*,
100 U.S. 371 (1879) ......................................................................... 14

*Smith v. United States*,
360 U.S. 1 (1959) .......................................................... 8, 17, 18, 20

*Stirone v. United States*,
361 U.S. 212 (1960) .......................................................... 8, 16, 18

*Sun Bear v. United States*,
644 F.3d 700 (8th Cir. 2011) ........................................................ 22

*Vasquez v. Hillery*,
474 U.S. 254 (1986) ........................................................................... 2

*United States v. Allen*,
247 F.3d 741 (8th Cir. 2001) .......................................................... 6

*United States v. Allen*,
357 F.3d 745 (8th Cir. 2004) .......................................................... 6

*United States v. Allen*,
406 F.3d 940 (8th Cir. 2005) ....................................... 6, 15, 18, 19, 21

*United States v. Allen*,
549 U.S. 1095 (2006) ........................................................................ 6

*United States v. Allen*,
829 F.3d 965 (8th Cir. 2016) .......................................................... 7

*United States v. Apfel*,
97 F.3d 1074 (8th Cir. 1996) ........................................................ 22

*United States v. Dionisio*,
410 U.S. 1 (1973) ............................................................................ 20

*United States v. Farr*,
536 F.3d 1174 (10th Cir. 2008) ....................................................... 21

*United States v. Leichtnam*,
948 F.2d 370 (7th Cir, 1991) ...................................................... 20, 21

*United States v. Pennington*,
No. 3:01-CR-35-R, 2003 U.S. Dist. LEXIS 24478 (W.D. Ky. Feb. 19,
2003) ................................................................................................ 19-20

*United States v. Regan*,
221 F. Supp. 2d 672 (E.D. VA, 2002) .............................................. 19

*United States v. Resendiz-Ponce*,
549 U.S. 102 (2007) ........................................................................... 24

*United States v. Willoughby*,
27 F. 3d 263 (7th Cir. 1994) ........................................................ 21, 22

*Weaver v. Massachusetts*,
582 U.S. 286 (2017) ...................................................................... 22, 25

*Ex parte Wilson*,
114 U.S. 417 (1885) ........................................................................... 20

<u>S<small>TATUTES</small> & R<small>ULES</small></u>

18 U.S.C. § 924(j)(1) ............................................................................ 5
18 U.S.C. § 2113(a) & (e) ..................................................................... 5
28 U.S.C. § 2241 ........................................................................ *passim*
28 U.S.C. § 2255 ........................................................................ *passim*
Fed. R. Civ. P. 59 ............................................................................ 9, 10
Fed. R. Crim. P. 7 ................................................................................. 8

<u>O<small>THER</small> A<small>UTHORITIES</small></u>

American Bar Ass'n, *Guidelines for the Appointment and Performance of
Counsel in Death Penalty Cases*, Guideline 1.1 & cmt., 31 Hofstra L. Rev.
913, 923 (2003) ................................................................................... 26

Brooke M. Butler, *The Role of Death Qualification in Venirepersons'
Evaluations of Aggravating and Mitigating Circumstances in Capital Trials*,
26 Law and Human Behavior 175, 176-177 (2002) ............................ 27

Gary Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty Cases*,
58 N.Y.U. L. Rev. 299, 329 (1983) ................................................................ 26, 27

William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 Ind. L. J. 1043, 1059-60 (1995) ............................ 27

Appellant Billie Jerome Allen brings this appeal from the district court's order denying his petition for writ of habeas corpus ("§ 2241 petition"). The Court directed Mr. Allen to file a memorandum explaining why the district court's order should not be summarily affirmed and to address what effect, if any, the commutation of his death sentence has on this appeal. Summary affirmance is not warranted here because the commutation of Mr. Allen's death sentence to life imprisonment has no impact on this appeal, which raises important and novel constitutional questions. Mr. Allen hereby files the ordered memorandum and respectfully requests full briefing and an appeal in the ordinary course.

**INTRODUCTION**

Mr. Allen was tried, convicted, and sentenced on a capital charge for which he was never indicted in a blatant violation of his Fifth Amendment rights. The Fifth Amendment provides, in pertinent part, "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury." The language is clear and unambiguous that only the grand jury has the power to decide if a person should be subject to a capital prosecution. The founding fathers did not give that power to the prosecutor. Judges do not have that power. That power exclusively rests with the grand jury.

In Billie Allen's case, the grand jury did not indict him on capital charges and did not decide that he should be subject to a capital prosecution. Instead, the prosecutors circumvented the Constitution and decided that Mr. Allen should face a capital trial when it filed a notice of aggravating circumstances. After Mr. Allen objected, the trial judge decided that he should face a capital trial when he overruled that objection. And on direct appeal, although the Eighth Circuit agreed that this process violated the Fifth Amendment, the en banc Court decided that the error was harmless and that it was appropriate to try Mr. Allen capitally based on its speculation that the grand jury would have issued a capital indictment if it had been asked. Yet the grand jury, the only body with the power to authorize a capital trial, was never asked and never made that decision.

Allowing prosecutors and judges to approve a capital trial, without an indictment, is a flagrant violation of the plain text of the Fifth Amendment. *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (only "[t]he grand jury [decides to] charge a greater offense or a lesser offense; numerous counts or a single count; 'and perhaps most significant of all, a capital offense or a noncapital offense--all on the basis of the same facts.'"). The Constitution is the supreme law of the land, and its dictates must be respected and followed. "That the Constitution outranks other sources of law is inherent in its nature." *Gamble v.*

*United States*, 587 U.S. 678, 718 (2019) (Thomas, J., concurring). Judges must follow its text even when it conflicts with other sources of law. There is "no legitimate reason why a court may privilege a demonstrably erroneous interpretation of the Constitution over the Constitution itself." *Id.* Yet that is exactly what was done here.

This error was far from harmless and has impacted the entirety of Mr. Allen's trial, conviction, sentence, and incarceration, and continues to cause him profound harm daily, as it has for the past 27 years. Now 47 years old, Mr. Allen has been living the consequences of this constitutional error for more than half of his life, which he has spent in insolation in a 6' x 8' cell for 23 hours a day. His one hour of recreational time is spent in an even smaller cell outside—four concrete walls and a concrete floor with a small glimpse of the sky, surrounded by barbed wire. Mr. Allen is prevented from having physical contact visits with any non-legal visitors, meaning he has not been able to embrace his mother or other family members since he was 19 years old. Psychosocially, these restrictions have been devastating for Mr. Allen's mental health. President Biden's commutation of Mr. Allen's death sentence does not assuage the continued harms Mr. Allen endures and does nothing to moot this appeal. Mr. Allen remains incarcerated on a life sentence without the possibility of parole for a charge he was never indicted on and continues to be confined by the severe restrictions reserved for people incarcerated on death row.

Moreover, Appellant's commuted death sentence continues to play a substantial role in his conditions of confinement. As a direct result of his death sentence, Mr. Allen is subject to President Donald Trump's Executive Order 14164, which requires the Attorney General to ensure that all federal prisoners whose death sentences were commuted are "imprisoned in conditions consistent with the monstrosity of their crimes and the threats they pose." Consistent with that Order, the Bureau of Prisons has instituted proceedings to transfer Appellant to the highly restrictive supermax facility in Florence, Colorado known as ADX. Mr. Allen, who has a record of good behavior as a federal prisoner, would not be subject to such harsh and excessive conditions of confinement but for the unconstitutionally obtained death sentence.

If Mr. Allen had been sentenced to life imprisonment or a term of years, rather than unconstitutionally sentenced to death, the execution of his sentence would be drastically different. The restrictive conditions that he lives under are not placed on incarcerated people who were not sentenced to death—they can socialize with one another throughout the day, participate in educational and vocational programming, enjoy recreational time outside in a larger area, with access to grass and a track, have expanded access to the phone, library, and computer, and can visit with their family members in person rather than behind a glass wall.

"Judicial power is never exercised for the purpose of giving effect to the will of the judge; always for the purpose of giving effect to the will of the . . . law." *Osborn v Bank of United States*, 22 U.S. 738, 866 (1824) (Marshall, C.J.). There must be a remedy available to Mr. Allen for these constitutional violations. Habeas corpus is that remedy, particularly as there was no vehicle available to challenge the Eight Circuit's usurpation of the power entrusted to the grand jury. The District Court's conclusion that it had no jurisdiction to consider Mr. Allen's claims was in conflict with these fundamental constitutional principles. As described further below, *Jones v. Hendrix*, 599 U.S. 465 (2023), is not to the contrary.

## STATEMENT OF THE CASE

### A. Indictment, Trial and Appellate Proceedings

On March 17, 1997, two masked gunmen entered the Lindell Bank on Clayton Avenue in St. Louis. The gunmen shot and killed Richard Heflin, the bank security guard, when he drew his sidearm.

Mr. Allen was indicted on two charges in the United States District Court for the Eastern District of Missouri. Count I charged Mr. Allen with killing Mr. Heflin in the course of committing an armed bank robbery, in violation of 18 U.S.C. § 2113(a) & (e), and Count II charged the use of a firearm to commit a crime of violence, resulting in Mr. Heflin's murder, in violation of 18 U.S.C. § 924(j)(1).

5

The indictment did not allege *any* aggravating circumstance and, thus, did not charge a capital offense.  Nevertheless, the Government filed a notice of intent to seek the death penalty.  Mr. Allen's objections to a capital prosecution were overruled.

A death-qualified jury convicted Mr. Allen on both counts.  At the penalty hearing, the jury found identical aggravating and mitigating circumstances on the two counts, but returned a sentence of life imprisonment on Count I and death on Count II.  The district court formally sentenced Mr. Allen on June 4, 1998.

On appeal, the Eighth Circuit affirmed. *United States v. Allen*, 247 F.3d 741, 795 (8th Cir. 2001).  The Supreme Court granted certiorari, vacated the Eighth Circuit's decision, and remanded for reconsideration in light of *Ring v. Arizona*, 536 U.S. 584 (2002); *Allen v. United States*, 536 U.S. 953 (2002).

On remand, a panel of the Eighth Circuit vacated the death sentence, finding that the indictment's failure to charge a statutory aggravating factor violated Mr. Allen's Fifth Amendment right to indictment by a grand jury, and that the error was not harmless beyond a reasonable doubt. *See United States v. Allen*, 357 F.3d 745, 747 (8th Cir. 2004).  The en banc Eighth Circuit reversed, finding that the error was harmless, and reinstated Mr. Allen's death sentence. *United States v. Allen*, 406 F.3d 940, 942, 949 (8th Cir. 2005) (en banc).  Certiorari was denied. *United States v. Allen*, 549 U.S. 1095 (2006).  Mr. Allen subsequently sought relief

pursuant to 28 U.S.C. § 2255, but relief was denied. *United States v. Allen*, 829 F.3d 965 (8th Cir. 2016).

In December 2024, President Biden commuted Mr. Allen's death sentence to one of life imprisonment without parole, but this commutation has no impact on the issues before this Court.

### B.    Mr. Allen Seeks Relief Under 28 U.S.C. § 2241

In August 2020, Mr. Allen filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2241 in the Southern District of Indiana. Dkt. No. 2:20-cv-00406-JRS-MJD, Doc. 1. The case was assigned to Judge James Sweeney.  On August 6, 2020, the District Court granted Petitioner's motion to proceed *in forma pauperis*. Doc 6. On October 15, 2020, the District Court appointed counsel from the Federal Community Defender Office for the Eastern District of Pennsylvania to represent him. Doc. 10.

As explained in his habeas petition, Doc. 1, and reply in support, Doc. 20, Mr. Allen claimed that his conviction and death sentence are unconstitutional in violation of the Fifth Amendment, because he was never indicted by the grand jury for the crime of capital murder.  *See* Doc. 20 at 3-5.  Although the Eighth Circuit, on direct appeal, found constitutional error, its application of a harmless error analysis was likewise constitutional error because it violated the Supreme Court's

holding in *Stirone v. United States*, 361 U.S. 212, 215 (1960), that such error is structural and not subject to harmless error.

In addition, the Eighth Circuit's ruling interjected yet another layer of constitutional error in that it constructively amended the indictment by speculating that the grand jury would have indicted on capital murder if it had been asked to do so. Doc 20 at 6-9. *See Ex parte Bain,* 121 U.S. 1, 10 (1887) ("If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance" of the grand jury right would be "almost destroyed."). The harmless error analysis effectively waived Mr. Allen's right to indictment on a capital charge, in violation of *Smith* and Fed. R. Crim. P. 7. *Smith v. United States*, 360 U.S. 1, 9-10 (1959).

Petitioner further argued that the trial court had no jurisdiction to try him on a capital offense because the indictment had not charged him with a capital crime. Doc. 20 at 9-10. Because counsel was forced to defend against a capital charge that had never been charged, and to make strategic decisions and allocate his limited resources knowing that those decisions would impact a potential capital sentencing proceeding, the constitutional error substantially impacted both phases of the trial. He asserted, *inter alia*, that the District Court had jurisdiction to decide

8

this habeas because 28 U.S.C. § 2241 is an appropriate mechanism to challenge the jurisdiction of the trial court to convict and sentence him in a capital case where the indictment did not present a capital charge. Doc. 20 at 13.  Moreover, given the unique circumstances of this case, including the Eighth Circuit's unprecedented constructive amendment of the indictment through the application of a harmless error test on direct appeal, and Eighth Circuit law precluding any challenge to that ruling, Petitioner satisfied the savings clause of § 2255. Doc. 20 at 12-13.

Substantive briefing was completed in January 2021.

**C.     Proceedings Following *Jones v. Hendrix***

On August 25, 2023, the District Court, relying on the Supreme Court's then-recent decision in *Jones v. Hendrix*, 599 U.S. 465 (2023), dismissed Mr. Allen's habeas petition for lack of jurisdiction and entered final judgment. Petitioner filed a Motion to Vacate Judgment, pursuant to Fed. R. Civ. P. 59, in which he requested leave to provide further briefing on the applicability of *Jones* to the unique facts of this case.  On September 7, 2023, the District Court issued an Order granting the request for further briefing and setting a briefing schedule.

On October 10, 2023, Petitioner filed a memorandum arguing that *Jones* did not divest the court of jurisdiction to hear his habeas petition.  The government did not file a timely response to Petitioner's supplemental briefing, and the District Court did not make a final ruling on Petitioner's Rule 59 motion, as supported by

9

the supplemental brief.  Instead, seven months later, on April 24, 2024, the Government filed a motion for a nunc pro tunc extension of time, which Petitioner opposed. Docs. 32, 33.  Without awaiting a ruling, the Government filed a memorandum on May 24, 2024. Doc. 35.  Petitioner filed a reply on June 18, 2024. Doc. 37.

On January 21, 2025, Appellant filed a Petition for Mandamus, asking this Court to compel the district court to decide the outstanding motions that had not been decided.  On January 23, 2025, the district court issued an order and opinion denying the motion to alter or vacate the judgement.  On January 27, 2025, this Court denied the mandamus as unnecessary.

Mr. Allen filed a timely notice of appeal from the district court's final order denying his Rule 59 motion as well as the Order denying his habeas corpus petition.  On February 21, 2025, this Court issued an order for Appellant to file a memorandum of law explaining why summary affirmance should not be granted. The order also required Appellant to address the impact of the commutation of sentence on this appeal.

Appellant files this memorandum in response to that order.

**ARGUMENT**

## I. WHETHER THE DISTRICT COURT HAD JURISDICTION TO HEAR MR. ALLEN'S HABEAS CORPUS PETITION IS A QUESTION WORTHY OF FULL BRIEFING AND REVIEW.

The District Court, relying on the Supreme Court's decision in *Jones v. Hendrix*, 599 U.S. 465 (2023), dismissed Mr. Allen's habeas petition for lack of jurisdiction. *Jones* held that § 2241 was not available to an incarcerated person who sought to raise a statutory interpretation claim that was not available at the time of his initial § 2255 litigation. The holding in *Jones*, as opposed to any dicta, addressed only claims of statutory interpretation. *Jones* did not address claims raising violations of fundamental constitutional rights, such as Mr. Allen's.

Although recognizing that the issues and specific ruling in *Jones* were different from those presented here, Doc. 24 at 4, the District Court read *Jones* to create a "universal rule" that precluded jurisdiction under § 2241 whenever a federal prisoner had previously been denied relief under § 2255. *Id.*

The Court noted an exception to that universal rule "in cases where unusual circumstances make it impossible or impractical to seek relief in the sentencing court." Doc 24 at 5. But the District Court further held that exception was limited to situations where the sentencing court had been dissolved, or defendant could not otherwise appear. *Id.*

The District Court's reading of *Jones* goes far beyond its actual holding. In its view, it does not matter if the sentencing and appellate courts overrode the plain language of the Constitution, if Mr. Allen's Fifth Amendment rights were violated, or if the Eighth Circuit unconstitutionally ignored the actual indictment handed down by the grand jury and replaced it with its view of what the grand jury might have done. Nor does it matter that he lacks any potential path to challenge those rulings. It is perfectly fine that Mr. Allen has no redress and no opportunity to vindicate his constitutional rights.

*Jones*, of course, made no such rulings and did not deal with anything close to the constitutional errors at play in this case. Whether *Jones* can be extended to deny jurisdiction in Mr. Allen's case presents important constitutional questions that have never before been addressed by this Court or the United States Supreme Court. Those questions are worthy of full briefing and review.

### A.    The *Jones* Decision

In *Jones,* the Supreme Court defined its holding: "we hold that § 2255(e)'s saving clause does not permit a prisoner asserting an intervening change in statutory interpretation to circumvent AEDPA's restrictions on second or successive § 2255 motions by filing a § 2241 petition." *Jones*, 465 U.S. at 471. This relatively narrow holding does not address, let alone dictate, the issues raised in this case.

However, in dicta, *Jones* suggested that the reasoning underlying this holding was broader and imposed substantial limits on a district court's § 2241 jurisdiction. Although Congress intended that the vast majority of collateral attacks be brought under § 2255, Congress enacted a savings clause that allowed some collateral attacks to be brought under § 2241, where the remedy under § 2255 was "inadequate or ineffective" to test the legality of a federal prisoner's detention.

The *Jones* Court explained that "[t]raditionally, courts have treated the saving clause as covering unusual circumstances in which it is impossible or impracticable for a prisoner to seek relief from the sentencing court." 465 U.S. at 474. The Court mentioned two such examples: when the sentencing court has been dissolved or where it is impractical to transport a prisoner to the sentencing court. *Id.* at 474-5.

*Jones* should not be read as suggesting that those two examples are the only situations in which the savings clause might apply. This would be a manifest error of law. "After AEDPA, as before it, the saving clause preserves recourse to § 2241 in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court . . ." *Jones*, 465 U.S. at 478.

Because Congress exercised its authority to exclude non-constitutional statutory claims from being the subject of a second or successive § 2255 motions, petitioner's non-constitutional claims in *Jones*, though barred by § 2255, did not

13

meet the savings clause. *Id.* at 478-80.  Mr. Allen's case is different.  Mr. Allen

presents constitutional and jurisdictional claims challenging the jurisdiction of the

trial court and the constitutional error committed by the appellate court on direct

appeal.  These are highly unusual circumstances in which recourse to the

sentencing court is precluded because the sentencing court had no jurisdiction to

try Mr. Allen on a capital offense and because the appellate court's constitutional

error could not have been raised in the initial § 2255 proceeding.

**B.**     **Habeas Review Has Been Historically Available to Federal Prisoners Who Raise Jurisdictional Challenges**

Habeas has long been available to prisoners seeking to challenge the

jurisdiction of the court in which they were tried and sentenced.  "A habeas court

could grant relief if the court of conviction lacked jurisdiction over the defendant

or his offense."  *Brown v. Davenport*, 142 S. Ct. 1510, 1521 (2022). *See Ex parte*

*Siebold*, 100 U.S. 371 (1879) (habeas relief is available to challenge whether the

convicting court had jurisdiction over the person or the cause).

In this case, Mr. Allen has used the traditional process of habeas corpus to

challenge the jurisdiction of the convicting court.  As discussed in more detail

below, Mr. Allen argued, because the indictment did not charge him with a capital

offense, the convicting court had no jurisdiction to try or sentence him for a capital

offense. Doc. 20 at 9-10.  Indeed, the Eighth Circuit found that Mr. Allen's Fifth

Amendment rights were violated.  But the Eighth Circuit then constructively

amended the indictment to include a capital charge by finding the error harmless,

speculating about what the grand jury might have done created yet another layer of

constitutional error.  But § 2255 provided no opportunity to challenge the

convicting court's jurisdiction because of the appellate court's constitutional error

on direct appeal.  As a matter of law, review under § 2255 was not only

inadequate, but impossible.

There can be no question that these facts present highly unusual

circumstances.  Nor can it be doubted that § 2255 was inadequate and ineffective

to address these jurisdictional and constitutional issues.  Mr. Allen sought to

invoke § 2241 in order to exercise his traditional rights to seek habeas relief by

challenging the jurisdiction of the convicting court.  There is nothing in § 2255 that

evidences Congress' intent to extinguish that traditional challenge.  And *Jones* did

not create any new barriers that Congress did not enact.

C.   **The Trial Court Lacked Jurisdiction To Try Mr. Allen for the Crime of Capital Murder**

"[I]t is clear that Allen's indictment suffers a Fifth Amendment defect[.]"

*United States v. Allen*, 406 F.3d 940, 943-44 (8th Cir. 2004).  Billie Allen was

never indicted on a capital offense.  The indictment against him did not include

any aggravating circumstances that form the elements of a capital murder.

15

Thus, the indictment returned by the grand jury only included charges of non-capital murder, which is a different offense than capital murder.

Deprivation of the Fifth Amendment's right to an indictment by grand jury is "far too serious to be treated as nothing more than a variance and then dismissed as harmless error." *Stirone v. United States*, 361 U.S. 212, 217 (1960). *Stirone* explained that the grand jury right cannot be taken away with or without court amendment. *Id.* at 215-16. A conviction on a charge the grand jury never made against a defendant is "fatal error." *Id.* at 219.

> **1. Capital murder is a different crime than non-capital murder, because aggravating circumstances function as elements of the crime of capital murder.**

Any fact that is essential to sentencing operates as an element of the offense. An indictment, devoid of allegations of aggravators and intent factors, does not charge a capital offense under federal law. Because the finding of an aggravating circumstance is a necessary requirement for making a defendant eligible for a death sentence, it is a part of a new offense (capital murder) and not merely a sentencing factor relating to the lesser offense (murder). *Sattazhan v. Pennsylvania*, 537 U.S. 101, 112 (2003) (murder plus one or more aggravating circumstances is a separate offense from murder *simpliciter)*; *Ring v. Arizona*, 536 U.S. 584, 609 (2002) (aggravating circumstances function as elements of a greater offense).

Based solely on the indictment against him, which did not contain any aggravating circumstance, Mr. Allen could only be tried for non-capital murder. The elements of capital murder, which could have subjected him to a possible death sentence, were never charged and the court lacked jurisdiction to try and convict him of a capital crime. The Constitution forbids that, but the convicting court did so, and the Eighth Circuit condoned this violation of Mr. Allen's constitutional rights.

**2. Mr. Allen's grand jury did not consider any aggravating circumstance and did not specify any in the indictment. Thus, Mr. Allen was never charged with capital murder.**

The Fifth Amendment was enacted in "recognition of the fact that the intervention of a grand jury was a substantial safeguard against oppressive and arbitrary proceedings." *Smith*, 360 U.S. at 9. Deprivation of this "basic right" to be tried only on charges returned by a grand jury is "serious," and "[t]he very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Stirone* 361 U.S. at 217-218.

The grand jury's indictment of Mr. Allen did not include any aggravating circumstances that could have constituted the crime of capital murder. *Allen*, 406 F.3d at 941. Rather, the government simply filed a notice of the

17

aggravating circumstances they intended to use in support of a death sentence. *Id.* Such notice, however, is no substitute for the Fifth Amendment's grand jury requirement. *See Smith*, 360 U.S. at 13-14 (Clark, J., concurring). This procedure violated the Fifth Amendment's grand jury requirement. *Allen*, 406 F.3d at 943. The Constitution does not allow a prosecutor or judge to turn a non-capital charge into a capital charge. Only the grand jury has that power.

For a person to be "held to answer for a capital…crime" under the Fifth Amendment, the charging instrument must contain the allegations necessary to expose him to capital punishment. *Matthews v. United States*, 622 F.3d 99, 102-03 (2d Cir. 2010). "A charging instrument that alleges no aggravating elements authorizing capital punishment does not do so." *Id.* at 103. Here, the indictment alleged no aggravating elements authorizing capital punishment.

Under the plain text of the Constitution, the trial court had no jurisdiction to try Mr. Allen on a capital charge. At the time of the passage of the Constitution, habeas corpus was the method to challenge the jurisdiction of the court, and the Constitution specifically recognized and preserved the right to habeas corpus. Given this history, the question of whether habeas corpus is available to challenge a court's jurisdiction is worthy of full briefing and review.

**D.** **The Unusual Circumstances Present Here Make It Impossible To Seek Relief From The Sentencing Court**

The unusual circumstances in this case start with the nature of the error.  The Fifth Amendment of the Constitution explicitly requires that a capital prosecution can only proceed by indictment.  No other way is permissible.  Billie Allen was never indicted on a capital offense.

The government could have chosen to seek a superseding indictment from the grand jury, one that charged aggravating circumstances, but chose not to.  *See United States v. Regan*, 221 F. Supp. 2d 672, 675 (E.D. VA, 2002) (where the government did just that).  Instead, the government was allowed to charge and try Mr. Allen for capital murder simply by filing a Notice of Aggravating Circumstances.  *See Allen*, 406 F.3d at 941.  This was, without question, a violation of the Fifth Amendment.  *See United States v. Pennington*, 2003 U.S. Dist. LEXIS 24478 No. 3:01-cr-35-R, slip op. at *63 (W.D. Ky. Feb. 21, 2003) (granting defendant's motion to preclude imposition of the death penalty where the indictment did not allege death-qualifying statutory aggravating factors or the requisite mens rea, and the government did not seek a superseding indictment prior to jeopardy attaching).  This error should have prevented the government from conducting a capital prosecution in nature and effect and prevented the convicting Court from exercising its jurisdiction "to hear the case."

19

*Smith*, 360 U.S. at 10.  In *Smith*, the Court held that "[u]nder our view of Rule 7(a), the United States Attorney did not have authority to file" an information and any waivers made of the indictment requirement "did not confer power on the convicting court to hear the case." *Id.*  (citing *Ex parte Wilson*, 114 U.S. 417 (1885)).  In the same way here, the government had no authority to file a Notice of Intent to Seek the Death Penalty that sought to identify the aggravating circumstances that had not been included in the indictment and such filing "did not confer power on the convicting court to hear the [capital] case." *Id. See also United States v. Dionisio*, 410 U.S. 1, 16-17 (1973) (indictment by a grand Jury "presupposes an investigative body 'acting independently of either prosecuting attorney or judge'").

The government also constructively amended the indictment when it introduced into evidence a shotgun that was not the weapon charged in the indictment.  Tr. 2/17/98 at 11-12; 15-16, 30, 36.  Because the shotgun was not charged in the indictment, the prosecution's argument and introduction of the shotgun, along with instructions to the jury allowing it to consider the shotgun, impermissibly broadened the basis the jury could have relied upon to convict.  An indictment has been impermissibly amended when the jury is allowed to use a firearm not set forth in the indictment as a basis for conviction.  *See United States v. Leichtnam*, 948 F.2d 370, 380-81 (7th Cir, 1991) (introduction of firearms not

charged in the indictment impermissibly broadened the indictment); *United States v. Willoughby*, 27 F. 3d 263 (7th Cir. 1994).

The unusual nature of these proceedings—a capital trial without a capital indictment—were compounded by the Eighth Circuit's treatment of the claim on direct appeal. After recognizing that the Fifth Amendment had been violated, the en banc court should have viewed this as structural error. Instead, the Court took the unprecedented step of applying harmless error by speculating that the grand jury would have indicted Mr. Allen on capital charges if it had been asked to do so. *United States v. Allen*, 406 F.3d 940, 947-48 (8th Cir. 2004). Such a ruling is contrary to the plain text of the Constitution as it gave the Court, rather than a group of concerned citizens, the power to decide what the grand jury would do. The decision constructively amended the indictment by turning a non-capital indictment into a capital one. In this way, the Eighth Circuit created yet another constitutional error that compounded the trial court's constitutional error with one of its own. *See United States v. Farr*, 536 F.3d 1174, 1184-85 (10th Cir. 2008) (Gorsuch, J.) (Fifth Amendment violation resulting from constructive amendment of the indictment was reversible error per se without any further showing of prejudice). *See also Willoughby*, 27 F.3d at 263, 265 (evidence or instructions that allow a jury to convict on an offense other than the one charged is a constructive amendment to the indictment and is per se reversible error).

A defendant may be tried for a felony only on the charges the grand jury approved, as it approved them, and no others. *United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir 1991); *Farr*, 536 F.3d at 1180. In *Weaver v. Massachusetts*, 582 U.S. 286, 305 (2017), the Court held that where "a structural error is preserved and raised on direct review, the balance is in the defendant's favor, and a new trial generally will be granted as a matter of right." Mr. Allen objected at trial and preserved these structural error claims on appeal. Therefore, he is entitled to have his conviction and death sentence reversed, and be granted a new trial.

But because he objected at trial, and raised the matter on direct appeal, as he was obligated to, it was impossible for Mr. Allen to challenge the Eighth Circuit's ruling or contest the appellate court's constitutional error in the sentencing court. Under Eighth Circuit law, § 2255 is only available for issues that could not have been raised on direct appeal. *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). Claims that were raised unsuccessfully on direct appeal cannot be raised in a motion to vacate under § 2255. *Sun Bear v. United States*, 644 F.3d 700, 702 (8th Cir. 2011) (en banc); *Dall v. United States*, 957 F.2d 571 (8th Cir. 1992). The sentencing court would be bound by the Eighth Circuit's ruling, and the doctrines of res judicata and law of the case would preclude any challenge in § 2255 proceeding. Mr. Allen's only opportunity to challenge the Eighth Circuit's ruling lies in the traditional remedy of habeas corpus.

22

By properly objecting and raising his claim on direct appeal, Mr. Allen was precluded by law from raising the Eight Circuit's unconstitutional resolution of his claim in § 2255 proceedings. In other words, § 2255 was unavailable to him as a mechanism for challenging the Eighth Circuit's error and the unconstitutional nature of his capital trial. These principles are a structural barrier to Mr. Allen's ability to obtain § 2255 review. In *Beason v. Marske*, 926 F.3d 932, 937 (7th Cir. 2019), this Court held that a § 2241 petitioner had been "actually foreclosed" from raising an argument in § 2255 proceedings, where the argument had been rejected on direct appeal and the law of the case precluded relitigation of the same issue in a collateral proceeding. It did not matter that the argument advanced on direct appeal was "a bit different" than the argument raised in the § 2241 petition, where the general contention was the same. *Id.* The court reasoned that a petitioner in this situation, "[a]s a practical and legal matter . . . needed a superseding development," such as an intervening judicial decision, to receive renewed consideration of the argument. *Id*. This Court has not yet decided whether its reasoning in *Beason* survives *Jones*. That question is worthy of full briefing and review.

In short, this case presents the unusual circumstances of a capital case that was tried with no capital indictment, in violation of the Fifth Amendment; a trial court that thus had no jurisdiction to proceed on capital charges and impose a death

23

sentence; an appellate court that constructively amended the indictment to include a capital charge when the grand jury had not done so; and a procedural posture that rendered it impossible for Petitioner to challenge those rulings in § 2255 proceedings. This case meets the exceptions explicitly allowed by *Jones.*

The writ of habeas corpus is an indispensable mechanism for monitoring the separation of powers. The test for determining the scope of this provision must not be subject to manipulation by those whose power it is designed to restrain. *Boumediene v. Bush,* 553 U.S. 723, 765-66 (2008). Implicit in the writ is the federal courts' duty to check the power of Congress and the Executive branch to detain and punish individuals. Section 2241 gives this Court the power to review Mr. Allen's claims. *See United States v. Resendiz-Ponce,* 549 U.S. at 116-117 (Scalia, J., dissenting) (noting the need to determine whether an indictment error such as the one here can be harmless, and concluding that it cannot). Without such review, Mr. Allen has no other mechanism to challenge a sentence imposed for a crime for which he was never indicted. As *Weaver* held, a new trial should be granted where structural error was raised and litigated in the trial court and on appeal. *Id.,* 582 U.S. at 305.

This Court should enforce that directive. As Justice Thomas wrote in *Gamble,* when a court sees that an error has been committed, judges have "the

24

right" and "the duty" to correct the error.  *Gamble*, 587 U,S, at 716 (Thomas, J., concurring).

Accordingly, the question of whether Mr. Allen's case presents unusual circumstances that fall within the *Jones* exceptions is worthy of full briefing and review.

**II.     WHETHER THE COMMUTATION OF HIS DEATH SENTENCE HAS ANY IMPACT ON MR. ALLEN'S CONSTITUTIONAL CLAIM—AND IT DOES NOT—IS A QUESTION WORTHY OF FULL BRIEFING AND REVIEW.**

**A.     Trial on a Capital Charge is Materially Different from Trial on a Non-Capital Charge as the Capital Charges Impacts Every Aspect of His Trial and Defense Strategy**

The harm caused to Mr. Allen by the violation of his Fifth Amendment rights permeated every aspect of his trial, conviction, and sentencing.  The commutation of Mr. Allen's death sentence prevented an unconstitutional execution but has not abated the remaining harm which began the moment the capital charge was unconstitutionally brought against him.  As discussed below in more detail, the entire structure of Mr. Allen's trial was impacted by the capital charge, from conducting voir dire to produce a death-qualified jury, to the development of trial strategy, to the allocation of limited resources to the penalty phase of trial.

Defending a capital case imposes unique and extraordinary demands on counsel from the very outset of the case, affecting all aspects of their

representation, even if the penalty phase is never reached. *See* American Bar

Association, *Guidelines for the Appointment and Performance of Counsel in Death

Penalty Cases*, Guideline 1.1 & cmt., 31 Hofstra L. Rev. 913, 923 (2003).  Perhaps

most importantly, the prospect of a potential penalty phase following the guilt

phase "requires counsel to undertake correspondingly broad investigation and

preparation" that must begin immediately and with the assistance of a professional

investigator and mitigation specialist.  *Id.* at 925.  A capital case requires counsel to

spend time and use resources to prepare to defend against a death penalty that

could otherwise be used to fully investigate and prepare the defense against the

charges themselves. *See Dunn v. Reeves*, 594 U.S. 731, 738 (2021) (stating that

lawyers have limited time and resources and therefore must choose between

countless possible options); *see also Campbell v. Reardon*, 780 F.3d 752, 765

(2015) (stating that defense resources are limited, and counsel must make decisions

about when to shift areas of investigation).

Unlike noncapital cases, where the attorney's primary concern is presenting

a plausible case for an acquittal, the extraordinary nature of the potential

punishment requires capital defense counsel to consider what impact their guilt

phase presentation will have at a possible sentencing hearing.  *See* Gary

Goodpaster, *The Trial for Life: Effective Assistance of Counsel in Death Penalty

Cases*, 58 N.Y.U. L. Rev. 299, 317, 329 (1983).  "Counsel's portrayal of her client

and the nature of the defense at the guilt phase may significantly, perhaps determinatively, affect the sentencer's perceptions of the defendant at the penalty trial." *See id.* at 324-25.

The government's failure to include aggravating factors in the indictment also impacted the composition of the jury. Mr. Allen's jury was death-qualified, and "the evidence is 'overwhelming' that death-qualified juries are 'substantially more likely to convict or to convict on more serious charges than juries on which unalterable opponents of capital punishment are permitted to serve.'" *Buchanan v. Kentucky*, 483 U.S. 402, 427 (1987) (Marshall, J., dissenting) (quoting *Lockhart v. McCree*, 476 U.S. 162, 184 (1986) (Marshall, J., dissenting); s*ee also* William J. Bowers, *The Capital Jury Project: Rationale, Design, and Preview of Early Findings*, 70 Ind. L. J. 1043, 1059-60 (1995); Brooke M. Butler, *The Role of Death Qualification in Venirepersons' Evaluations of Aggravating and Mitigating Circumstances in Capital Trials*, 26 Law and Human Behavior 175, 176-177 (2002). But for the unconstitutional post-indictment capital charge, Mr. Allen may not have been convicted at all and he certainly could not have been sentenced to death. Mr. Allen was denied the protections and guarantees of the Fifth Amendment to which he is entitled, rendering his conviction and sentence unconstitutional.

**B. Mr. Allen Continues to Suffer Harm from the Unconstitutional Execution of the Death Sentence**

Although Mr. Allen's death sentence has been commuted to life imprisonment, he remains subject to the harsh restrictions of people condemned to death. Because these conditions are the result of a conviction for capital murder, a crime for which Mr. Allen was never indicted, they are unconstitutional and subject to review under § 2241.

While the execution of a death sentence ordinarily culminates in death, it begins the moment of a verdict for the death penalty and comes with severely restrictive conditions. This includes strict limits on Mr. Allen's time outside his cell, limited opportunity to work or participate in educational or vocational programming, limited recreation time, limited time to use the phone, library, and computer, and limited visitation. Unlike people incarcerated in the same facility as Mr. Allen for non-capital convictions, Mr. Allen has not been able to have physical contact with any non-legal visitors, including his mother and other family members since he was 19 years old.

Mr. Allen no longer lives with the threat of death by execution looming over him, but apart from this, he is still subject to the harsh treatment of a death row inmate, and the execution of his death sentence remains in effect. The ongoing harm that Mr. Allen suffers from the execution of his death sentence is even more

evident following President Trump's issuance of Executive Order 14164 on January 20, 2025.  The Executive Order states, in relevant part,

> The Attorney General shall evaluate the places of imprisonment and conditions of confinement for each of the 37 murderers whose Federal death sentences were commuted by President Biden, and the Attorney General shall take all lawful and appropriate action to ensure that these offenders are imprisoned in conditions consistent with the monstrosity of their crimes and the threats they pose.

As a result of this Executive Order, Mr. Allen faces the imminent threat of being moved to ADX Florence in Colorado, a "supermax" prison designed to hold prisoners in near-total solitary confinement.  Indeed, Mr. Allen recently received paperwork from the Bureau of Prisons that read: "*Inmate Allen, Billie, Reg. No. 26901-044, is a 47-year old, Black, male offender. Inmate Allen is a United States citizen. Inmate Allen's custody level is MAX, and his security level is HIGH. He has the Security Threat Group (STG) assignment of Death Row inmate.*"

Thus, Mr. Allen continues to be treated differently because of his prior death sentence and his commutation has had no effect, or has even worsened, his conditions of confinement.  Mr. Allen's living conditions will become even more severely restricted, with more limited access to the phone, library, and computer, limits on the art supplies he can use, and the requirement that he wear leg restraints and chains around his waist when meeting with his family behind glass.  The execution of Mr. Allen's death sentence is in full effect.

Despite the communication, Mr. Allen continues to suffer daily from the execution of his unconstitutionally imposed death sentence.

## CONCLUSION

For the foregoing reasons, the Court should deny summary affirmance and grant full briefing and an appeal in the ordinary course.

Respectfully submitted,

/s/ *Stuart Lev*
Stuart Lev
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West
Philadelphia, PA 19106
215-928-0520

Brian Weinstein
Dara Sheinfeld
Diane Lucas
Matthew Stratis-Vasilakos
Stephanie Hansen
Erin Sifre
Chitra Kulkarni
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000

*Counsel for Petitioner/Appellant*
*Billie Jerome Allen*

Dated: April 23, 2025

**CERTIFICATE OF COMPLIANCE**

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

/s/ *Stuart Lev*
Stuart Lev

Dated:  April 23, 2025

## CERTIFICATE OF SERVICE

I, Stuart Lev, hereby certify that, on this date, I electronically filed the foregoing brief with the Clerk of Court for the Seventh Circuit by using the appellate CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Stuart Lev*
Stuart Lev

Dated: April 23, 2025