**No. 25-1684**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT**

NORRIS G. HOLDER, JR., Petitioner-Appellant

v.

UNITED STATES OF AMERICA and
STEVEN MERENDINO Respondent-Appellees

On Appeal from the United States District Court
for the Southern District of Indiana
No. 2:23-cv-00524-MPB-MKK, Hon. Matthew P. Brookman

# SECOND MEMORANDUM OF APPELLANT

LISA G. PETERS
FEDERAL DEFENDER

Eliza Meredith
Assistant Federal Defender
Federal Public Defender's Office
1401 W. Capitol Ave., Suite 490
Little Rock, Arkansas 72201
(501) 324-6114

*Counsel for Petitioner-Appellant*

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ........ iii

**INTRODUCTION** ........ 1

**ARGUMENT** ........ 2

I. Neither *Jones v. Hendrix* nor *Agofsky* forecloses Holder from seeking relief under section 2241. ........ 2

II. *Robinson* does not require summary dismissal of this appeal. .... 5

A. *Cotton*'s non-jurisdictional rationale does not apply in a capital cases, where the right to a grand jury's indictment cannot be waived. ........ 6

B. *Robinson* did not consider whether § 2255 was adequate to test a jurisdictional claim distinct from the claim the § 2255 court decided. ........ 11

C. *Robinson* did not address challenges to the execution of a sentence. ........ 13

D. At a minimum, the Court should hold this appeal pending the Supreme Court's disposition of the petition for certiorari. ........ 14

III. Holder's jurisdictional challenge also includes the execution of his sentence: he remains subject to confinement determined by his former capital status ........ 15

**CONCLUSION** ........ 19

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Agofsky v. Baysore*,
160 F.4th 857 (7th Cir. 2025) .......... 1, 4

*Alleyne v. United States*,
570 U.S. 99–15 (2013) .......... 7

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......... 10

*Borden v. United States*,
593 U.S. 420 (2021) .......... 4

*Brown v. Davenport*
596 U.S. 118 (2022) .......... 4, 10

*Ex parte Siebold*,
100 U.S. 371 (1880) .......... 4

*Ex parte Watkins*,
3 Pet. 193, 202 (1830) .......... 4

*Ex parte Wilson*,
114 U.S. 417 (1885) .......... 10

*Gonzalez v. Thaler*,
565 U.S. 134 (2012) .......... 9-10

*Holder v. United States*,
721 F.3d 979 (8th Cir. 2013) .......... 11, 12

*Jones v. Hendrix*,
599 U.S. 465 (2023) .......... 2, 3, 4, 13

*Kadamovas v. Director, Fed. Bureau of Prisons*,
No. 2:23-cv-22 (S.D. Ind.) ........................................................ 18

*Lamar v. United States*,
240 U.S. 60 (1916) ........................................................................ 9

*Matthews v. United States*,
622 F.3d 99 (2nd Cir. 2010) .......................................................... 9

*Rehaif v. United States*,
588 U.S. 225 (2019) ...................................................................... 3

*Ring v. Arizona*,
536 U.S. 584 (2002) ...................................................................... 7

*Robinson v. Lammer*,
162 F.4th 853 (7th Cir. 2025) ................................................ 1, 13

*Rodriguez de Quijas v. Shearson/American Exp., Inc.*,
490 U.S. 477 (1989) ...................................................................... 8

*Smith v. United States*,
360 U.S. 1 (1959) .............................................................. 2, 7, 10

*Taylor et al v. Trump et al*,
No. 1:25-cv-3742 (D.D.C) ........................................................... 15

*U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*,
487 U.S. 72 (1988) ...................................................................... 10

*United States v. Allen*,
247 F.3d 741 (8th Cir. 2001) ........................................................ 12

*United States v. Cotton*,
535 U.S. 625 (2002) ................................................................ 1, 6, 8, 9

*United States v. Williams*,
341 U.S. 58 (1951) ........................................................................ 9

**Statutes, Rules, and Constitutional Provisions**

18 U.S.C. § 2113 .......... 7
18 U.S.C. § 3591 .......... 7, 12
18 U.S.C. § 3592 .......... 7
28 U.S.C. § 509 .......... 16
28 U.S.C. § 2241 .......... *passim*
28 U.S.C. § 2255 .......... *passim*
Fed. R. Crim. P. 7 .......... 6, 7

**Other Authorities**

Nkem Adeleye, *The Death Row Phenomenon: A Prohibition Against Torture, Cruel, Inhuman and Degrading Treatment or Punishment*, 58 San Diego L. Rev. 875 (2021) .......... 18

## INTRODUCTION

Norris G. Holder, Jr., has been imprisoned for nearly three decades on two convictions obtained in a capital trial that no grand jury authorized and the trial court had no power to conduct. He filed in the Southern District of Indiana a petition seeking relief from those unlawful convictions under 28 U.S.C. § 2241. The district court denied relief, and this appeal ensued. Now, as directed by this Court on August 19, 2026, Holder submits this memorandum of law addressing the effect of this Court's decisions in *Agofsky v. Baysore*, 160 F.4th 857 (7th Cir. 2025), and *Robinson v. Lammer*, 162 F.4th 853 (7th Cir. 2025).

Neither *Agofsky* nor *Robinson* disposes of this appeal. *Agofsky* held that 28 U.S. § 2255(e) limits the district court's jurisdiction over § 2241 habeas petitions, a proposition Mr. Holder has never disputed. Rather, his position has always been that his claim satisfies the savings clause.

*Robinson* rejected a § 2241 challenge to a capital prosecution on an indictment that omitted the elements of a capital offense, but it does not resolve this appeal, for three reasons. First, *Robinson* held that the sufficiency of the indictment in that case was a non-jurisdictional question under *United States v. Cotton*, 535 U.S. 625 (2002). But *Cotton*,

and by extension *Robinson*'s reliance on it, is inapposite in a capital case: *Cotton*'s rule rests on the premise that the right to a grand jury's indictment can be waived in cases that do not implicate the death penalty, but in capital cases it cannot. *Smith v. United States*, 360 U.S. 1, 9 (1959). Second, *Robinson* did not consider whether a § 2255 proceeding that treated the indictment's omission as harmless error, as Holder's § 2255 proceeding did, was adequate to test whether the court had power to act at all. Third, *Robinson* did not address challenges to the execution of a sentence, which *Jones v. Hendrix*, 599 U.S. 465 (2023), expressly left within § 2241's ambit. Moreover, the questions *Robinson* did decide are now before the Supreme Court. *See Robinson v. Lammer*, No. 25-7553 (U.S. filed June 2, 2026). Summary affirmance of this appeal is therefore unwarranted. At a minimum, the Court should hold this appeal pending the Supreme Court's disposition of Robinson's petition.

## ARGUMENT

### I. Neither *Jones v. Hendrix* nor *Agofsky* forecloses Holder from seeking relief under section 2241.

In *Jones v. Hendrix*, the Supreme Court held that 28 U.S.C. §2255(e), the so-called "savings clause," does not permit a federal prisoner to use § 2241 to raise a statutory-interpretation claim that

became available only after his initial § 2255 proceeding. 599 U.S. at 471, 477–78 (abrogating this Court's rule from *In re Davenport*, 147 F.3d 605 (7th Cir. 1998)). There, petitioner Jones had unsuccessfully challenged his felon-in-possession convictions and later sought § 2241 relief based on the Supreme Court's decision in *Rehaif v. United States*, 588 U.S. 225 (2019). The Court held that a prisoner's inability to satisfy § 2255(h)'s conditions for a successive motion does not render § 2255 "inadequate or ineffective." *Jones*, 599 US. at 470.

*Jones* did not eliminate the savings clause. It remains available "in cases where unusual circumstances make it impossible or impracticable to seek relief in the sentencing court, as well as for challenges to forms of detention other than collateral attacks on a sentence." *Id.* at 478. The latter category includes claims that a prisoner is held "in a place or manner not authorized by his sentence," has been unlawfully denied parole or good-time credits, or is subject to an illegal "administrative sanction affecting the conditions of his detention[.]" *Id.* at 475.

Further, as pertinent here, *Jones* did not disturb the historical understanding that the writ of habeas corpus reaches a claim that the convicting court lacked jurisdiction. *Id.* at 469–81; *see also id.* at 483–87

(citing *Brown v. Davenport*, 596 U.S. 118 (2022) and *Ex Parte Siebold*, 100 U.S. 371 (1880)). While the majority reasoned that foreclosing an ordinary statutory claim under § 2255(h) does not violate the Suspension Clause because that claim was not one "cognizable in habeas" at the founding, *Jones* reaffirmed the traditional principle that a judgment is binding only when it is issued by "a court of competent jurisdiction." 599 U.S. at 480–83 (quoting *Ex parte Watkins*, 3 Pet. 193, 202 (1830)).

Holder filed his § 2241 petition in the wake of *Jones*. He alleged that the trial court lacked jurisdiction—he was tried, convicted, and sentenced on capital offenses for which he was never indicted—and that his claim thus falls within the savings clause as *Jones* construed it. Pet. at 1–15, ECF No. 1; Dkt. 5 at 10–15.

This Court's decision in *Agofsky* is wholly unrelated to Holder's argument. *Agofsky* was the straightforward application of *Jones* in cases involving statutory-interpretation claims. 160 F.4th at 862. There, petitioner Agofsky filed a § 2241 petition relying on *Borden v. United States*, 593 U.S. 420 (2021), arguing that *Borden*'s non-retroactive statutory rule should apply to his old conviction. *Id.* Applying *Jones*, this Court agreed that § 2241 did not authorize such a claim. *Id.* at 866.

The petitioner in *Agofsky* raised two arguments on appeal: first, that capital cases are exempt from *Jones*[1]; and second, that the savings clause is merely a venue provision that the government waived. Holder has never made either argument. His position from the outset has been that his claim satisfies the savings clause. *Agofsky*'s holding therefore changes nothing about this appeal; to the contrary, it confirms that the question must be whether the savings clause is satisfied, which is the question Holder has presented all along.

## II. ***Robinson*** **does not require summary dismissal of this appeal.**

*Robinson* held that a claim about the "sufficiency" of an indictment is not jurisdictional in light of *Cotton*, and that the Suspension Clause therefore does not require § 2241 review. 163 F.4th at 856. It also held that § 2255 was not inadequate because the sentencing court "still exists and is open" and that a prisoner's "inability to prevail" there does not mean there is an avenue for relief under § 2241. *Id.* at 855.

[1] Counsel for Agofsky withdrew his Eighth Amendment arguments prior to this Court's decision. *Agofsky v. Baysore*, No. 24-1067 (7th Cir. March 25, 2025), Dkt. 54.

As laid out next, *Robinson*'s brief comment about *Cotton* was a plain misreading of that case. The dismissal in *Robinson* was based on the parties' memoranda, without full briefing or oral argument. Its ruling rests on a bare citation to *Cotton*; the opinion does not address *Smith,* Rule 7(a)(1)(A), and does not grapple with *Cotton*'s reliance on the waivability of the grand jury right in non-capital cases. Holder respectfully submits that in his appeal, these issues warrant the full consideration they have not yet received. Further, to the extent the Court reads *Robinson* to foreclose the arguments in Parts II.A and II.B, Holder respectfully submits that it was wrongly decided, and he preserves each of those arguments for further review.

### A. *Cotton's* non-jurisdictional rationale does not apply in a capital cases, where the right to a grand jury's indictment cannot be waived.

The *Robinson* panel's reliance on *Cotton* was misplaced. *Cotton* held that the indictment's defect in that case was not jurisdictional because subject-matter jurisdiction "can never be forfeited or waived," 535 U.S. at 625, whereas "the grand jury right can be waived." *Id.* at 630. For that premise, *Cotton* cited *Smith*. *Id.* (citing *Smith*, 360 U.S. at 6). But *Smith* held that the right to indictment may be waived only in non-capital cases;

when the offense is capital, *Smith* holds that the right cannot be waived, and an information filed in place of an indictment cannot "confer power on the convicting court to hear the case." *Smith*, 360 U.S. at 9–10. Federal Rule of Criminal Procedure 7 continues to codify that rule. *See* Fed R. Crim. P. 7(a)(1)(A) ("An offense . . . must be prosecuted by an indictment if it is punishable [] by death.").[2] The upshot is straightforward: where the Fifth-Amendment right to a grand jury's indictment cannot be waived, as in a capital prosecution like this one, *Cotton*'s distinction between an unwaivable jurisdictional attack and a waivable right to an indictment does not apply.

*Smith*'s rule reaches this case because Holder was never indicted for a capital offense at all. The grand jury charged two offenses: one count of bank robbery resulting in death, in violation of 18 U.S.C. §§ 2113(a) and (e), and one count of carrying or using a firearm during a crime of violence resulting in death, in violation of 18 U.S.C. §§ 924(c)(1) and (j)(1). The indictment omitted every gateway intent factor necessary under 18 U.S.C. § 3591(a) and every statutory aggravating circumstance necessary

[2] This rule contrasts with that applicable to non-capital offenses, for which the defendant may agree to waive his right to an indictment and proceed by information alone. *See* Fed. R. Crim. P. 7(b).

under § 3592(c). Under *Alleyne v. United States*, 570 U.S. 99, 114–15 (2013), and *Ring v. Arizona*, 536 U.S. 584, 609 (2002), those facts are elements of a separate, aggravated capital offense, distinct from the non-capital offenses the indictment charged. The grand jury therefore never charged the offense on which Mr. Holder was tried as a capital defendant and sentenced to death.

That *Cotton* itself involved an indictment's omission of a fact that also raised the statutory maximum, 535 U.S. at 627–28, bears emphasis. The omission in *Cotton* and the omission here are alike in kind. What separates them is the one consideration *Cotton* treated as decisive: in *Cotton*'s non-capital prosecution the grand jury right could be waived, and in Holder's capital prosecution it could not.

*Cotton* relied on *Smith* and did not purport to overrule it, and *Smith* remains binding precedent that this Court must follow. When a Supreme Court precedent "has direct application in a case," a court of appeals "should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Exp., Inc.*, 490 U.S. 477, 484 (1989). Again,

*Robinson* did not discuss *Smith*, much less identify a decision overruling it.

The authorities *Cotton* cited for the proposition that the Supreme Court had "departed from [the] view that indictment defects are 'jurisdictional,'" 535 U.S. at 631, confirm the point. *Lamar v. United States*, 240 U.S. 60 (1916), and *United States v. Williams*, 341 U.S. 58 (1951), were non-capital cases, and both predate *Smith*. *See Cotton*, 535 U.S. at 630–31. The Court decided *Smith* with both *Lamar* and *Williams* on the books and did not treat them as foreclosing a distinct, non-waivable rule for capital indictments. They cannot now be read to have swallowed a rule they did not prevent the Court from adopting.

At least one other federal appellate court sees *Smith* the same way. The Second Circuit continues to apply *Smith* in the post-*Ring* framework, holding that the Fifth Amendment "guarantees an unwaivable right to indictment by grand jury not when the statute creating the offense authorizes capital punishment in some circumstances, but when the charging instrument holds the defendant to answer for a capital crime." *Matthews v. United States*, 622 F.3d 99, 103 (2nd Cir. 2010). That conclusion accords with settled jurisdictional doctrine. "Subject-matter

jurisdiction can never be waived or forfeited," and objections to it "may be resurrected at any point in the litigation." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *accord Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). "The distinction between subject-matter jurisdiction and waivable defenses is not a mere nicety of legal metaphysics. It rests instead on the central principle of a free society that courts have finite bounds of authority." *U.S. Cath. Conf. v. Abortion Rts. Mobilization, Inc.*, 487 U.S. 72, 77 (1988). A defect going to whether a grand jury ever authorized a capital prosecution falls on the jurisdictional side of that line.

It also bears directly on the Suspension Clause. As discussed, *supra*, the founding-era writ reached claims that "the court of conviction lacked jurisdiction over the defendant or his offense." *Brown*, 596 U.S. at 129. In *Ex parte Wilson*, 114 U.S. 417, 429 (1885), the Supreme Court granted habeas relief to a prisoner sentenced for an infamous crime because he had been prosecuted without indictment, holding that the sentencing court had exceeded its jurisdiction. *Smith* relied on *Wilson*. *See* 360 U.S. at 10. The *Robinson* panel resolved the Suspension Clause question by characterizing the claim as non-jurisdictional, but by inference it acknowledges that the Suspension Clause requires vacating

a capital conviction where, as here, the defect in the indictment is jurisdictional.

### B. *Robinson* did not consider whether § 2255 was adequate to test a jurisdictional claim distinct from the claim the § 2255 court decided.

If the indictment's omission deprived the trial court of power to conduct a capital proceeding, as Holder contends, then the § 2255 proceeding that rejected his Fifth Amendment claim as one for a harmless-error violation was not adequate to test his jurisdictional claim.

In his § 2255 motion, Holder argued that under the Supreme Court's 2003 decision in *Ring* that the indictment's failure to allege a statutory aggravating factor violated the Fifth Amendment. *Holder v. United States*, No. 4:03-cv-923-ERW, ECF No. 12 at 3–4, 28–29 (E.D. Mo. June 8, 2004). The Eighth Circuit agreed that the omission was error. But it held the error was "not structural and . . . thus subject to harmless-error analysis," and it denied relief on the ground that the grand jury would likely have charged the missing elements had it been asked. *Holder v. United States*, 721 F.3d 979, 999 (8th Cir. 2013) (citing *United States v. Allen*, 406 F.3d 940, 943 (8th Cir. 2005) (en banc)). The court reasoned that because "the same grand jury that returned [co-defendant

Billie Jerome] Allen's indictment also returned Holder's indictment based on the same evidence and for the same charges," there was no "realistic possibility" that the grand jury would have declined to charge Holder with the missing elements. *Id.* (quoting *Allen*, 406 F.3d at 949). But the evidence did not show that the roles of the two defendants were alike. The evidence showed that Allen, not Holder, shot and killed the victim, Pet. at 2 n.1—a crucial difference since the "intent" factors a grand jury must find turn on each defendant's own culpability. *See* 18 U.S.C. §3591(a)(2); *see also United States v. Allen*, 247 F.3d 741, 798 (8th Cir. 2001) (Arnold, J., dissenting) (concluding the evidence did not prove Mr. Holder's specific intent).

Holder's § 2241 petition presents a different claim: because no capital offense was charged, the trial court never had jurisdiction to conduct a capital proceeding. Pet. at 4–9. That claim has never been tested. The only time the § 2255 proceeding presented the indictment's omission of a capital offense as a claim, the adjudicating court concluded the omission was harmless error—an analysis that presupposes the court's power to act. Section 2255(h) foreclosed any further claim, because a jurisdictional claim rests on neither newly discovered evidence nor a

new retroactive rule of constitutional law. Holder's § 2241 petition recognizes this, explaining, "[t]he inadequacy of § 2255 to correct the jurisdictional defect in [this] case is highlighted by the Eighth Circuit's prior decision regarding the indictment." Pet. at 13.

*Robinson* did not consider this type of argument. The petitioner there raised his indictment claim before trial and on direct appeal; his § 2255 court never adjudicated it. *Robinson v. Lammer*, No. 24-3040, Dkt. 7 at 9 (7th Cir. Feb. 18, 2025). His theory of inadequacy was that *Alleyne* was a post-conviction development that, under *Webster* and *Garza*, took his claim outside § 2255(e). *Id.* at 9, 13–19. This Court rejected that theory, reasoning that the Robinson's problem was "not inability to litigate but inability to prevail." 162 F.4th at 855. Holder does not seek to relitigate the Fifth-Amendment claim his § 2255 court already decided; he presents a jurisdictional claim which that proceeding never tested and which cannot be waived.

### C. *Robinson* did not address challenges to the execution of a sentence.

*Jones* preserved § 2241 "for challenges to detention other than collateral attacks on a sentence," including claims that a prisoner "is being detained in a place or manner not authorized by the sentence" or

that "an administrative sanction affecting the conditions of his detention is illegal." 599 U.S. at 475, 478. Neither *Agofsky* nor *Robinson* addressed such a claim. Holder was confined for decades on death row under a sentence of death, and he remains subject, as a commuted death row prisoner, to confinement determined by his former capital status. *See* Part III, *infra*. His placement in harsher confinement because of that status is an injury to the place and manner of his confinement, traceable directly to a capital prosecution no grand jury authorized.

### D. At a minimum, the Court should hold this appeal pending the Supreme Court's disposition of the petition for certiorari.

Holder also notes that Robinson has petitioned for certiorari from this Court's decision. *Robinson v. Lammer*, No. 25-7553 (U.S. filed June 2, 2026). That petition presents two questions: (1) whether, under *Smith*, the government's failure to indict the aggravated capital offense deprived the convicting court of jurisdiction; and (2) whether *Jones* forecloses § 2241 review of that claim consistent with the Suspension Clause. Petition for Writ of Certiorari, *id.* Robinson's petition also identifies a live circuit split: the Fifth and Seventh Circuits treat *Cotton* as having implicitly overruled *Smith*'s capital-specific rule, while the Second Circuit

(*Matthews*) preserves the distinction. *Id.* at 7–8. As of this filing the petition had been distributed for the Court's conference of September 28, 2026—confirming that the questions Holder presents are neither frivolous nor settled, but is, at this moment, squarely before the Supreme Court. At a minimum, this Court should not conclusively dispose of Holder's jurisdictional claim while similar questions are before the Supreme Court.

## III. Holder's jurisdictional challenge also includes the execution of his sentence: he remains subject to confinement determined by his former capital status.

Holder challenges not only his sentence but the trial court's power to try him for a capital offense at all. The capital character of the government's proceedings against Holder shaped every stage of his trial, from the selection of a death-qualified jury to the defense's allocation of its resources. *See* Dkt. 5 at 15–17. The consequences of Holder's now-commuted capital status have continued, and in some respects intensified, since his prior memorandum. *See* Dkt. 5 at 18–23.

On February 11, 2026, the district court in *Taylor et al v. Trump et al*, No. 1:25-cv-3742 (D.D.C), preliminarily enjoined the Bureau of Prisons ("BOP") from transferring any of the plaintiffs in *Taylor*—Mr.

Holder included—to the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADX Florence"). *Taylor*, 1:25-3742, ECF No. 71 at 34. The court found that plaintiffs were likely to succeed on their claim that the redesignation process was a "sham process" that violated their procedural due process rights, *id.* at 13–29, and that they met all requirements for injunctive relief, *id.* at 30-34. The government did not appeal.

On May 7, 2026, the BOP filed a *Notice of Vacatur of ADX Florence Designations and New Process to Determine Appropriate Confinement Location*. *See Taylor*, 1:25-3742, ECF 87. The Notice stated that, on May 6, 2026—one day earlier—BOP amended Program Statement 5100.08 to "recognize the Attorney General's authority, pursuant to 28 U.S.C. § 509, to designate or redesignate the place of a prisoner's imprisonment." *Id.* at 1. The Notice further stated that the plaintiff's prior redesignations to ADX Florence had been vacated and that [then-Acting] Attorney General Blanche had issued letters informing each plaintiff—Holder included—of a new policy and process governing redesignation decisions. *Id.* at 2.

The letters from Acting Attorney General Blanche, attached as Exhibit 3 to the Notice in *Taylor*, stated that the amended BOP Program

Statement "empowered" him to make redesignation decisions; that, acting on that "authority," he had made a "presumptive determination" that all plaintiffs should be redesignated to ADX; and that his "final individualized determination" would be unappealable. *See Taylor*, 1:25-3742, ECF 87-3 at 20–21. These statements confirm that transfer to ADX Florence remains the government's default and intended outcome for Holder, even after the vacatur of the initial ADX designations.

As Holder explained in his prior memorandum, part of the BOP's purported rationale for his initial designation to ADX Florence included the determination that he had a Security Threat Group assignment of a "Death Row Inmate." *See* Dkt. 5. at 22. BOP defines Security Threat Group ("STG") as an inmate group or gang acting collectively to promote violence, escape, drug trafficking, or terrorism—criteria that do not apply to Holder as an individual. Recently, Holder was reclassified as a "Previous Death Row Inmate" for STG purposes, confirming that the BOP continues to treat him as a heightened threat solely because of his commuted death sentences rather than any individualized risk assessment.

Holder also continues to be held in severely isolating and solitary conditions that have become even more restrictive since the commutation of his death sentences. He remains confined in the Special Confinement Unit ("SCU") at the United States Penitentiary in Terre Haute, Indiana. Prior to President Biden's commutations, SCU prisoners were divided into two tiers based on conduct: Phase I (solitary recreation) and Phase II (paired recreation and leisure room access). Holder was, at the time, in Phase II. The BOP has now eliminated the phase system entirely. As a result, all SCU prisoners are now restricted to individual recreation without access to the leisure room—effectively reducing everyone to Phase I conditions regardless of conduct or prior status. *See Kadamovas v. Director, Fed. Bureau of Prisons*, No. 2:23-cv-22, ECF 190 (S.D. Ind. June 17, 2026) (amended motion to certify case as class action)). The negative consequences from isolation and lack of stimulation are well documented. *See generally* Nkem Adeleye, *The Death Row Phenomenon: A Prohibition Against Torture, Cruel, Inhuman and Degrading Treatment or Punishment*, 58 San Diego L. Rev. 875 (2021).

The commutation accentuates the defect at the heart of this case: Holder's conditions of confinement continue to manifest the consequences

of a capital conviction and sentence no grand jury ever actually charged. These consequences reach the place and manner of Mr. Holder's confinement, the category of claim *Jones* left to § 2241. *See* Part II.C, *supra*.

## CONCLUSION

For the reasons set forth above, summary affirmance of the district court's judgment is not warranted. Holder is still being punished for having been illegally convicted and sentenced to death. This Court should order full briefing on the questions this appeal presents or, at a minimum, the Court should hold this appeal pending the Supreme Court's disposition of the petition for certiorari in *Robinson v. Lammer*, No. 25-7553.

Dated: October 2, 2026

Respectfully submitted,

LISA G. PETERS
FEDERAL DEFENDER

*/s/ Eliza Meredith*
Eliza Meredith
Assistant Federal Defender
Federal Public Defender's Office
1401 W. Capitol, Ste. 490
Little Rock, AR 72201
(501) 324-6114

**CERTIFICATE OF COMPLIANCE**

This memorandum complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,834 words, excluding the parts exempted by Fed. R. App. P. 32(f). It complies with the typeface requirements of Fed. R. App. P. 32(a)(5), the type-style requirements of Fed. R. App. P. 32(a)(6), and Seventh Circuit Rule 32(b), because it has been prepared in a proportionally spaced typeface using Microsoft 365 in 14-point Century Schoolbook.

*/s/ Eliza Meredith*
Eliza Meredith

Dated: October 2, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I electronically filed this memorandum with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. Participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

*/s/ Eliza Meredith*
Eliza Meredith

Dated: October 2, 2026